## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| LOCAL HOME CARE PARTNERS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>HOME CARE AND STAFFING<br>SOLUTIONS, LLC, WILLIAM<br>STINSON, and SUSAN STINSON,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No.:  N24C-08-038 EMD CCLD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: May 28, 2025
Decided: August 18, 2025

*Upon Consideration of Defendants' Motion to Dismiss*
**GRANTED in part, DENIED in part.**

Jeffrey J. Lyons, Esquire, Michael E. Neminski, Esquire, Baker & Hostetler, LLP, Wilmington, Delaware; Rachael L. Isreal, Esquire, Sean E. McIntyre, Esquire, Kevin Lissemore, Esquire, Baker & Hostetler, LLP, Cleveland Ohio.  *Attorneys for Plaintiff Local Home Care Partners, LLC.*

S. Michael Sirkin, Esquire, Holly E. Newell, Esquire, Ross Aronstam & Moritz LLP, Wilmington, Delaware; James N. Robinson, Esquire, White & Case LLP, Miami, Florida; Camille M. Shepherd, Esquire, Jade H. Yoo, Esquire, White & Case LLP, New York, New York; Court D. Smith, Esquire, Plunk Smith, PLLC, Frisco, Texas, *Attorneys for Defendants Home Care and Staffing Solutions, LLC, William Stinson and Susan Stinson.*

**DAVIS, P.J.**

## I.    INTRODUCTION

This is a breach of contract and fraud action assigned to the Complex Commercial Litigation Division of this Court.  The dispute here relates to the sale (the "Transaction")[1] of Brightstar Care of Plano/North Dallas, TX (the "Business") by Defendants William Stinson, Susan Stinson (together with William Stinson, the "Stinsons"), and Home Care and Staffing

---

[1] *See* Plaintiff's Amended Complaint for Damages with Certificate of Service (hereafter "Am. Compl.") (D.I. 13).

Solutions' ("HCSS", together with the Stinsons, "Defendants") to Plaintiff Local Home Care Partners, LLC ("LHCP"). The parties memorialized the Transaction in the Asset Purchase Agreement (the "APA").[2]

LHCP financed the Transaction through two promissory notes (the "Seller Notes")[3] and a loan from non-party Live Oak Banking Company ("Live Oak Bank") (the "Loan").[4] As part of the Transaction, LHCP, HCSS, and Live Oak Bank executed two Standby Creditor's Agreements (the "Standby Agreements"), which subordinated the Seller Notes to the Loan.[5] The Standby Agreements also imposed certain limitations on HCSS's ability to collect on the Sellers Notes before LHCP repaid the Loan.[6]

The Amended Complaint alleges that, prior to the Transaction, Defendants allowed the Business to improperly bill customers for medical supplies and services.[7] LHCP claims this scheme breached, and made fraudulent, several of the APA's representations and warranties.[8] LHCP also claims Defendants breached the APA by not turning over certain Business assets post-closing.[9] Additionally, the Amended Complaint alleges HCSS breached the Standby Agreements by accelerating the Seller Notes before the Loan was satisfied, and without Live Oak Bank's consent.[10]

Defendants filed a motion to dismiss (the "Motion") seeking relief under Civil Rule 12(b) as to the Amended Complaint.[11] The Motion seeks dismissal of all claims against the Stinsons

---

[2] *See* Am. Compl., Ex. A (hereafter "APA").
[3] *See* Am. Compl., Ex. B (hereafter "Seller Notes").
[4] *See* Am. Compl. ¶¶ 52-61.
[5] *See* Am. Compl., Ex. 3 (hereafter "Standby Agreements").
[6] *See id.*
[7] *See* Am. Compl. ¶¶ 20-22, 41-50.
[8] *See id.* ¶¶ 77-89, 101-17.
[9] *See id.* ¶¶ 80-81, 86.
[10] *See id.* ¶¶ 90-100.
[11] *See* Defendants' Opening Brief in Support of their Motion to Dismiss (hereafter "MTD") (D.I. 22).

for lack of personal jurisdiction.[12]  Separately, the Motion requests dismissal of the entire Amended Complaint, because: (i) LHCP's APA-based causes of action fail to state a claim;[13] and (ii) the Standby Agreements based claim based is moot.[14]  LHCP opposes dismissal, maintaining that its claims for relief are well-pled, and the Court has personal jurisdiction over the Stinsons.[15]  For the reasons discussed below, the Court **GRANTS** in part, **DENIES** in part, the Motion.

## II.      FACTUAL BACKGROUND

### A.  THE PARTIES AND THE BUSINESS

LHCP is a Texas LLC with its principal place of business in Plano, Texas.[16]  HCSS is a Texas LLC with its principal place of business in Frisco, Texas.[17]  The Stinsons are each individual residents of Frisco Texas.[18]  Prior to the Transaction, the Stinsons were HCSS's sole members.[19]  The Business operates two franchised "nursing, therapeutic, and home health aide" locations in Texas.[20]

### B.  THE TRANSACTION, THE APA, AND THE STANDBY AGREEMENTS

In early 2023, LHCP and HCSS effectuated the Transaction by executing the APA.[21] The Stinsons signed the APA on HCSS's behalf but are not individual parties to the APA.[22]

Delaware law governs the APA, which contains a Delaware forum selection clause.[23]

---

[12] *See id.* at 5-9.
[13] *See id.* at 9-39.
[14] *See id.* at 39-42.
[15] *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (hereafter "MTD Opp'n") (D.I. 26).
[16] Am. Compl. ¶ 10.
[17] *Id.* ¶ 11.
[18] *Id.* ¶¶ 12-13.
[19] *Id.* ¶ 11.
[20] *Id.* ¶¶ 1, 19.
[21] *See* APA at Preamble.
[22] *See id.*
[23] *Id.* § 9.10 ("any legal suit, action, or proceeding arising out of or based upon this Agreement, or the transactions contemplated hereby, may be instituted in . . . the courts of the State of Delaware . . . each party irremovably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.").

Several provisions of the APA are central to the parties' dispute. In Section 2.01, Defendants agreed to deliver all assets associated with the Business to LHCP at Closing.[24] These assets include HCSS's "proprietary Excel workbook file (and related software and algorithm) for determining historical payor pricing and collection rates[.]"[25]

The APA includes a non-compete provision. In Section 6.07(b), Defendants agreed not to compete with the Business for two years after the Transaction closed.[26]

Article IV of the APA contains various representations and warranties made by HCSS.[27] Section 4.04 states the "Financial Statements" attached to the APA were "prepared in accordance with GAAP . . . and fairly present in all material respects the financial condition of the Business."[28] Section 4.05 represents HCSS "has no liability with respect to the Business, except (a) those" disclosed in the Financial Statements; "and (b) those . . . incurred in the ordinary course of business consistent with past practice since the [Financial Statements' date] which are not . . . in excess of $150,000."[29] Section 4.12 warrants the "Accounts Receivable" in the Financial Statements:

> (a) have arisen from bona fide transactions entered into by Seller involving the rendering of services in the ordinary course of business consistent with past practice; and (b) constitute only valid, undisputed claims of Seller not subject to claims of set-off or other defenses or counterclaims.[30]

Section 4.15 states, "to Seller's Knowledge, no event has occurred or circumstances exists that may give rise to, or serve as a basis for, any [] Action" "relating to or affecting the Business."[31]

---

[24] *Id.* § 2.01.
[25] *Id.* § 2.01(l).
[26] *Id.* § 6.07(b).
[27] *See id.* at Article IV.
[28] *Id.* § 4.04.
[29] *Id.* § 4.05.
[30] *Id.* § 4.12.
[31] *Id.* § 4.15. The APA defines "Seller's Knowledge" as "the actual knowledge of William Stinson or Susan Stinson as of the date of this Agreement, including the knowledge such Persons would have had as of the date of this Agreement after having made reasonable inquiry." *Id.* § 1.

4

Similarly, Section 4.16 represents the Business "materially complied and is now complying, with all Laws applicable to the conduct of the Business."[32]

Article VIII outlines the parties' contractual indemnification obligations.[33] HCSS agreed, in Section 8.02, to indemnify LHCP:

> [s]ubject to the other terms and conditions of this ARTICLE VIII . . . [for] any and all Losses . . . arising out of . . . (a) any inaccuracy in or breach of any representations or warranties of [HCSS] contained in this Agreement . . . [and] (b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by [HCSS] pursuant to this Agreement[.]"[34]

The parties agreed to submit any direct indemnity claim in Section 8.05:

> [b]y the Indemnified Party giving the Indemnifying Party reasonably prompt written notice thereof, but in any event no later than thirty (30) days after the Indemnified Party becomes aware of such Direct Claim. The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reasons of such failure. Such notice by the Indemnified Party shall describe the Direct Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party.[35]

Section 8.09 states indemnification under the APA is the "sole and exclusive remedy with respect to any and all claims (other than claims [asserting] fraud, criminal activity or willful misconduct . . . ) for any breach of any representation [or] warranty[.]"[36]

The Transaction provides for a "Purchase Price" to be paid to HCSS.[37] The total amount of the Purchase Price is $12,565,000.[38] Of that Purchase Price, $9,810,000 in "Cash

---

[32] *Id.* § 4.16.
[33] *See id.* at Article VIII.
[34] *Id.* § 8.02. HCSS's indemnification obligation is subject to a tipping basket of "one percent (1.0%) of the Purchase Price," and an aggregate cap of "fifteen percent (15%) of the Purchase Price" for losses related to non-Fundamental Representations. *Id.* § 8.04(a). *See id.* § 8.01 ("Fundamental Representations" mean the representations in "Section 4.01, Section 4.02, Section 4.22, Section 5.01, Section 5.02, Section 5.03, and Section 5.04[.]").
[35] *Id.* § 8.05(c).
[36] *Id.* § 8.09.
[37] *Id.* § 2.05.
[38] *Id.*

5

Consideration" was due at Closing.[39]  LHCP paid the remaining $2,755,000 through the two

Seller Notes.[40]

LHCP financed the Cash Consideration with the Loan.[41]  As a condition of the Loan,

Live Oak Bank, LHCP, and HCSS executed the Standby Agreements, subordinating the Seller

Notes to the Loan.[42]  In the Standby Agreements, HCSS agreed to:

1. "[n]ot [] to accept or demand . . . with respect to the [Seller Notes] any [] [] default interest . . . late fees, penalties, expenses, [or] accelerated payments of interest or principle . . .  without Lender's prior express written consent";[43]

2. "take no action to enforce claims against [LHCP] on the [Seller Notes] until [the] Loan[s] [are] satisfied";[44] and

3. "take no action to enforce any claims against any guarantor of the [Seller Notes] until [the] Loan[s] [are] satisfied."[45]

## C. THE BUSINESS'S PRE-TRANSACTION BILLING PRACTICES

While negotiating the Transaction, the parties discussed the Business's operations and

standard procedures.[46]  A recuring topic was how the Business "cod[ed] and bill[ed] for supplies

and services . . . used when providing care."[47]  During these discussions, Susan Stinson stressed

the lucrative nature of the Business's supply billing practice.[48]  Additionally, William Stinson

represented billing was straightforward and "based on a fee schedule."[49]

LHCP alleges the Stinsons' statements were false, because:

---

[39] *Id.* § 2.05(a).
[40] *Id.* § 2.05(b); *see* Seller Notes.
[41] *See* Am. Compl. ¶¶ 54.
[42] *See id.* ¶¶ 54-56; Standby Agreements.
[43] Standby Agreements § 2.
[44] *Id.* § 4.
[45] *Id.* § 10.
[46] Am. Compl. ¶ 41.
[47] *Id.* ¶¶ 42-43, 46-46; *see also id.* ¶ 21 ("medical coding refers to the entry of a code corresponding to specific supplies or services, which would then be transmitted to the Business's payers – private individuals and insurance companies. The payers use the codes to calculate amounts that the Business is to be reimburse for the supply and/or service it rendered to the payers' patients.").
[48] *Id.* ¶¶ 42-43.
[49] *Id.* ¶¶ 46-47.

6

> HCSS's billing team was [] systematically using billing codes corresponding to supplies and services which it never used. Moreover, the billing codes Defendants used were reimbursable by payers at rates . . . [significantly] higher than the code corresponding to the supplies and services which the business was actually ordering and using.[50]

LHCP contends that this allegedly illegal[51] scheme "grossly inflated the Business's financial performance, inducing Plaintiff to pay more than the Business's assets were worth."[52]

After closing, LHCP discovered Defendants' improper billing practices.[53] Although Defendants allegedly miscoded "numerous" supplies and services, the Amended Complaint only gives one example – gauze pads.[54] Specifically, the Amended Complaint alleges "Defendants billed payers extensively with a code which corresponded to gauze with a pad size of more than 16 square inches. However, the Business was actually using a small pad size gauze."[55] This miscoding alone, "goosed up the Business's financial performance by nearly a million dollars a year."[56]

### D. PROCEDURAL HISTORY

LHCP filed its initial Complaint on August 5, 2024.[57] A week later, HCSS sent a letter to LHCP, alleging LHCP defaulted on the Seller Notes and accelerated payment of all outstanding principal and interest (the "Notice of Default").[58] HCSS did not get Live Oak Bank's consent before sending the Notice of Default.[59] The Loan remains outstanding.[60]

---

[50] *Id.* ¶¶ 44, 47.
[51] *See id.* ¶ 48 (alleging Defendants' "coding scheme" violated "18 U.S.C. § 1035.").
[52] *Id.* ¶¶ 22, 44, 48, 50.
[53] *See id.* ¶¶ 65-67.
[54] *Id.*
[55] *Id.* ¶ 66.
[56] *Id.*
[57] *See generally* Plaintiff's Complaint for Damages (D.I. 1).
[58] *See* MTD, Ex. A (hereafter "Notice of Default"); Am. Compl. ¶¶ 73-74.
[59] Am. Compl. ¶ 75; *see also id.* ¶ 76 ("[a]t the time Defendants issued the Notice of Default, [the Loans] had not been satisfied.").
[60] *Id.* ¶ 76 ("[a]t the time Defendants issued the Notice of Default, [the Loans] had not been satisfied.").

The Notice of Default prompted LHCP to file its operative Amended Complaint in late August 2024.[61] The Amended Complaint asserts three causes of action: (1) Count I – Breach of the APA against all Defendants;[62] (2) Count II – Breach of the Standby Agreements against HCSS;[63] and (3) Count III – Fraudulent Inducement against all Defendants.[64] Two weeks after LHCP filed the Amended Complaint, HCSS sent a second letter to LHCP (the "Amended Default Notice").[65] The Amended Default Notice re-noticed LHCP's Seller Notes default, but retracted the Notice of Default's "election to accelerate the outstanding principal and accrued interest[.]"[66]

Defendants filed the Motion in late September 2024.[67] The parties completed briefing on the Motion in the following months.[68] The Court heard oral argument regarding the Motion on May 28, 2025. After hearing argument, the Court took the Motion under advisement.

### III. THE PARTIES' ARGUMENTS

#### A. WHETHER THE COURT HAS PERSONAL JURISDICTION OVER THE STINSONS.

Defendants argue the Court lacks personal jurisdiction over the Stinsons.[69] The Motion contends the APA's forum selection clause does not bind the Stinsons, who are non-signatories,

---

[61] *See generally id.*
[62] *See id.* ¶¶ 77-89.
[63] *See id.* ¶¶ 90-100.
[64] *See id.* ¶¶ 101-17.
[65] *See* MTD, Ex. B (hereafter "Amended Default Notice").
[66] *Id.*
[67] *See generally* MTD.
[68] *See generally* MTD Opp'n; Defendants' Reply Brief in Further Support of Their Motion to Dismiss (hereafter "MTD Reply") (D.I. 29).
[69] MTD at 5-9. The Amended Complaint relies exclusively on the APA's forum selection clause as establishing personal jurisdiction over all Defendants. Am. Compl. ¶ 15 ("because in Section 9.10 of the [APA], Defendants irrevocably consented to the jurisdiction of the court of the state of Delaware for any 'suit, action, or proceeding arising out of or based upon' the [APA]." (quoting APA § 9.10(a))).

not third-party beneficiaries to the matters at issue here, and "never purported to bind themselves under the APA in their individual capacities."[70]

LHCP maintains the APA's forum selection clause provides personal jurisdiction over the Stinsons.[71] LHCP acknowledges the Stinsons did not sign the APA in the individual capacities, but insists they are nevertheless bound by the forum selection clause as third-party beneficiaries.[72] To support that position, LHCP relies on the Stinsons' contractual right to: (i) seek indemnification for third party claims;[73] and (ii) bring direct claims related to the APA.[74] LHCP contends the Stinsons' "individual rights to enforce all the APA's representations and promises are identical to the rights of the signatories."[75]

Even if the Stinsons are not third-party beneficiaries, LHCP asserts they are "equitably estopped from disclaiming the forum selection clause."[76] Specifically, LHCP maintains the Stinsons received a direct benefit under the APA, and it was foreseeable the Stinsons would be bound by the forum selection clause.[77] LHCP again relies on the Stinsons' right as "Seller Indemnitees" as the direct benefit.[78] Similarly, LHCP argues it was foreseeable the APA would

---

[70] MTD at 6-7. Defendants acknowledge the Stinson Defendants signed the APA on HCSS's behalf in their roles as officers and members of the company but insists that does not bind the Stinton Defendants personally. *See id.*; *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008) ("[d]irectors of a corporation, however, are not parties to a contract simply because the corporation is a party to a contract."). Additionally, Defendants maintain the APA's "No Third-Party Beneficiaries" clause refutes the Amended Complaint's allegations that the Stinsons' are third party beneficiaries to the agreement. MTD at 7 (citing APA § 9.08); *see* Am. Compl. ¶¶ 12-13.

[71] MTD Opp'n at 32-42. Alternatively, Plaintiff requests jurisdictional discovery. *Id.* at 43 (citing *Hart Hldg. Co. Inc. v. Drexel Burnham Lambert Inc.*, 593 A.2d 535, 539 (Del. Ch. 1991)).

[72] *Id.* at 35-39. Plaintiff insists the APA's "No Third-Party Beneficiaries" clause does not preclude such a finding, because it contains a carve-out – namely, "except as provided in Article VIII." *See id.*; APA § 9.08.

[73] *See id.* § 8.03.

[74] *See id.* § 8.05(c).

[75] MTD at 36-37 (citing APA § 8.03).

[76] *Id.* at 39-42.

[77] MTD at 40-42.

[78] *Id.* at 40-41 (citing APA §§ 8.03, 805(a)-(c)).

bind the Stinsons, because they "received a direct benefit under the APA and were involved in negotiating the APA[.]"[79]

Defendants reject both arguments.[80] Defendants maintain the "No Third-Party Beneficiaries" clause's limited exception does not obviate its otherwise broad disclaimer or "render the Stinson[s] beneficiaries to the entire APA."[81] Regarding equitable estoppel, Defendants assert the Stinsons' indemnification rights are an indirect benefit "because they depend on an indemnification claim."[82] Additionally, Defendants insist the "foreseeability" test does not provide a standalone basis to enforce the forum selection clause against the Stinsons.[83]

## B. WHETHER COUNT III IS DUPLICATIVE OR WELL-PLED

The Motion contends Count III: (i) does not plead fraud with particularity; (ii) merely bootstraps Plaintiff's contract claims; and (iii) improperly asserts extra-contractual fraud which the APA disclaims.[84] LHCP clarifies Count III only alleges intra-contractual fraud, and relies on the Stinson's extra-contractual statements only as evidence of scienter.[85] Given this, the Court will not address the parties' extra-contractual fraud arguments.

---

[79] *Id.* at 42.
[80] MTD Reply at 2-12.
[81] *Id.* at 3; APA § 9.08. Defendants assert the Delaware Court of Chancery rejected an argument that an indemnification provision, covering non-signatory affiliates, extended a forum selection clause to those affiliates. *See EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *9-10 (Del. Ch. Sept. 2, 2008) ("expressly including Affiliates [] [] within the ambit of [the indemnification provision] . . . while referring only to parties in the jurisdiction provision, manifested and intent not to include Affiliates under [the jurisdiction provision].").
[82] *Id.* at 6-7.
[83] MTD Reply at 8-10.
[84] *See* MTD at 9-30. Defendants also briefly argue Plaintiff cannot maintain a fraud claim against the Stinson Defendants specifically. *See id.* at 26-27 ("Plaintiff does not allege that the Stinson Defendants personally made any of the fraudulent statements within the APA.").
[85] MTD Opp'n at 14 n.5 (citing *American Auto Ass'n of Northern California v. Barnes Associates, Inc.*, 2020 WL 4729063, at *3 (Del. Ch. Aug. 13, 2020) (holding a plaintiff can rely on extra-contractual statements "for purposes of supporting an inference of scienter" in an intra-contractual fraud case)).

Defendants argue that the Amended Complaint fails to plead fraud with the particularity required under Civil Rule 9(b).[86] The Motion maintains LHCP does not plead how "the allegedly improper billing practices[87] render the APA's representations knowingly false."[88] Defendants address each of the four allegedly fraudulent representations cited in the Amended Complaint: (i) Section 4.04;[89] (ii) Section 4.12;[90] (iii) Section 4.15;[91] and (iv) Section 4.16.[92]

The Motion also argues that Count III is duplicative of Plaintiff's breach of contract claim.[93] Defendants contend "[t]he [Amended] Complaint does not draw any distinction

---

[86] MTD at 10-20; *see* Del. Super. Ct. Civ. R. 9(b); *Albert v. Alex. Brown Mgmt. Servs.*, 2005 WL 2130607, at *7 (Del. Ch. Aug. 26, 2006) (stating a fraud claim must identify "the time, place and contents of the false representations, the facts misrepresented, as well as the identity of the person making the misrepresentation and what he obtained thereby.").

[87] Defendants note that all of Plaintiff's fraud claims rely on the same general underlying conduct – allegedly widespread pre-closing improper billing and coding which inflated HCSS's value. MTD at 11-14. Yet, Defendants argue the Amended Complaint does not allege "any payor disputed the Business' [] billing methods, refused to pay . . . sought recoupment of claims that have been paid . . . [or] that any of the supposed improper coding or billing submissions were made with knowledge of their falsity. *Id.* at 11-12. Moreover, the Amended Complaint omits the fact that a third-party, not Defendants, coded claims and billed payors. *Id.* at 12-13. *See also* APA § 4.07(a) (disclosing that HSCC contracted with a third party to provide billing services).

[88] MTD at 11-20.

[89] Plaintiff alleges Section 4.04 was false, because HSCC's financial statements would have reflected a loss but for billing irregularities. *See* Am. Compl. ¶¶ 82, 105. Defendants argue this is "a claim for fraud based on an expectation of future performance, which fails as a matter of law." MTD at 16 (citing *Noerr v. Greenwood*, 1997 WL 419633, at *4 (Del. Ch. July 16, 1997)).

[90] The Amended Complaint alleges Section 4.12 was false because "the charges Defendants were transmitting to various payers were artificially inflated" by the improper coding practices. Am. Compl. ¶ 106. The Motion contends the allegations concerning Section 4.12 are too vague to state a claim. MTD at 17 ("Plaintiff does not allege that any of the accounts receivable referenced in Section 4.12 did not arise from bona fide transactions, were not valid, were disputed, or are subject to set-off or defenses. Nor does Plaintiff identify which accounts receivable were inflated, the amount by which they were inflated, or when such bills were issued.").

[91] Plaintiff asserts Section 4.15 was false because Defendants "failed to adequately disclose" facts regarding a payor's annual compliance review. Am. Compl. ¶ 68. Defendants maintain they complied Section 4.15, thus LHCP's claim is invalid. *Id.* at 18-19 ("HCSS's disclosure – that a payor 'had asked to review a list of patients as part of their annual compliance review' . . . was 'not a partial disclosure,' it was 'the representation that [LHCP] bargained for.'").

[92] The Amended Complaint asserts Section 4.16 was false because HSCC's improper billing practices "violated the Business's permits and licensures, as well as several provisions of state and federal law." Am. Compl. ¶ 108 (citing 18 U.S.C. § 1035). Defendants assert the Section 4.16 claim fails, because "Plaintiff does not identify the laws, licenses, or permits that were supposedly violated[.]" *Id.* at 19-20. Defendants insist the citation to 18 U.S.C. § 1035 is irrelevant, as only the government can bring claims thereunder, and "Plaintiff does not allege any such claim is being investigated or indicted." *Id.* at 20 n. 6 (citing *Jones v. Crisis Intervention Servs.*, 239 F. Supp. 3d 795, 800 (D. Del.), *aff'd*, 686 F. App'x 81 (3d Cir. 2017)).

[93] MTD at 27-30.

between the harms resulting from the alleged breach of contract and fraudulent misrepresentation/inducement."[94]

LHCP maintains Count III states a well-pled intra-contractual fraud claim.[95] LHCP insists that the Amended Complaint alleges Defendants "falsely represented [] the Business complied with all applicable laws in generating the financial performance reflected in the financial statements attached to the APA."[96] LHCP asserts that the APA speaks for itself regarding who made the misrepresentations, where and when they were made, and what Defendants gained therefrom.[97] Additionally, LHCP argues it alleged the Stinsons – who "possessed intimate knowledge of the Business's financial performance" – knew the challenged representations were false.[98] LHCP rejects the notion that Count III is duplicative of Count I,[99] because the remedies available for fraud are "broader, more flexible, and more encompassing that the remed[ies] for breach of contract."[100]

---

[94] *Id.* at 28-30. Defendants note Plaintiff requests the same "$1,000,000 for Defendants' fraud, including punitive damages, and breach of contract." *Id.* at Prayer for Relief.

[95] MTD Opp'n at 9-16 (citing *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *12 (Del. Ch. Sept. 30, 2020); *Prairie Cap. III, L.P. v. Double E. Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015)).

[96] *Id.* at 10 (citing Compl. ¶¶ 2-3, 22, 25, 29, 32-34, 44, 48-49). Plaintiff maintains that at the pleading stage "an allegation that identifies the specific statements and explains why plaintiff believes it to be false is sufficient." *Id.* at 10-11 (citing *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *24-25 (Del. Ch. Sept. 18, 2020)).

[97] MTD Opp'n at 10; *see* Am. Compl. ¶¶ 110-12 (alleging the fraudulent representations inflated the Company's purchase price). Additionally, Plaintiff maintains the APA evidences its justifiable reliance on the alleged misrepresentations "[i]n agreeing to acquire the assets of the Business." Am. Compl. ¶¶ 112-13; *see* MTD Opp at 15-16.

[98] MTD Opp'n at 12-14 (citing Am. Compl. ¶¶ 45, 49, 102, 105, 107, 109).

[99] *Id.* at 28-30.

[100] *American Auto Ass'n*, 2020 WL 4729063, at *5. For example, Plaintiff notes its fraud claim is not subject to Section 8.04's liability provisions which may cap its recoverable breach of contract damages. MTD Opp'n at 29-30. LHCP also insists the Court cannot determine whether its recoverable damages for Count I and Count III are identical on a motion to dismiss. *Id.* at 29 (citing *American Auto Ass'n*, 2020 WL 4729063, at *5).

## C. WHETHER COUNT I IS RIPE AND WELL-PLED

The Motion requests dismissal of Count I for two reasons.[101] First, Defendants contend Count I is not ripe, because LHCP did not satisfy the conditions precedent to litigation in the APA's indemnification procedure.[102] Specifically, Defendants insist LHCP did not fulfil the "pre-suit notice requirements" mandated by Section 8.05(c).[103]

Second, Defendants argue Count I does not "identify facts that demonstrate a breach of an express contract term[.]"[104] To support that position, the Motion relies on the same arguments proffered regarding the alleged lack of specificity concerning LHCP's fraud claim.[105]

LHCP maintains Count I states a reasonably conceivable breach of contract claim.[106] LHCP rejects the notion that Count I falls within the APA's indemnification provision.[107] Rather, Count I states a willful breach claim,[108] which the parties carved-out of Section 8.09.[109] Even if

---

[101] MTD at 30-35, 36-39. Defendants also assert Count II fails concerning the Stinson Defendants, again relying on the fact that "the Stinson Defendants are not parties to the APA." MTD at 35-36.

[102] MTD at 30-35.

[103] MTD at 31-34 (quoting APA § 8.05(c) ("[any] Direct Claim" "shall be asserted by the Indemnified Party giving the Indemnifying Party responsibly prompt written notice thereof . . . [which] shall describe the Direct Claim in reasonable detail . . . If the Indemnifying Party does not [] respond . . . the Indemnified Party shall be free to pursue such remedies as may be available" including litigation)). Because "Plaintiff does not allege it provided . . . any form of pre-suit notice," Defendants argue Count I is not ripe. *Id.* at 32-34 (citing *MSCM Hldgs. v. PCS-Mosaic Hldgs.*, 2024 WL 3595934, at *7 (Del. Ch. July 31, 2024) (dismissing a claim "because the [Counterclaim Plaintiffs] did not satisfy the pre-suit notice and objection procedure as required under [the contract]."); *Lennox Indus. v. All. Compressors LLC*, 2020 WL 4596840, at *3 (Del. Super. Aug. 10, 2020) (similar)).

[104] *Id.* at 36-39 (citing *Related Westpac v. JER Snowmass*, 2010 WL 2929708, at *6 (Del. Ch. July 23, 2010)).

[105] *Compare id.* at 37-39 (discussing the lack of specific factual allegations in LHCP's breach claim), *with id.* at 14-20 (arguing LHCP's fraud claim lacks the requisite specificity).

[106] MTD Opp'n at 20-28.

[107] *Id.* at 21-22.

[108] *See XRI Inv. Hldgs. LLC v. Holifield*, 2024 WL 3517630, at *23 (Del. Ch. July 23, 2024) ("willful breach . . . requires that a party intentionally act while knowing the conduct would constitute a breach."); *see* Am. Compl. ¶ 87 ("[e]ach of the breaches referenced above were made willfully and intentionally."). Defendants take issue with that classification. MTD Reply at 21-23. Defendants note the "Exclusive Remedies" clause exempts "willful misconduct" which both caselaw and the APA confirm is different than "willful breach." MTD Reply at 22 (citing APA §§ 8.04(c), 8.09) (noting the APA's damage cap exempts both "willful breach" and "willful misconduct"); *see Dieckman v. Regency GP*, 2021 WL 537325, at *36 (Del. Ch. Feb. 15, 2021) (defining "willful misconduct" as "intentional wrongdoing, not mere negligence, gross negligence or recklessness and [] 'wrongdoing' as malicious conduct or conduct designed to defraud or seek an unconscionable advantage." (internal quotations omitted)). Properly construed, Defendants assert LHCP has not pled any "willful misconduct" occurred in connection with the Transaction, such that the breach claim is exempt from the APA's indemnification procedure. MTD Reply at 23.

[109] *See* Agreement § 8.09 (excluding "claims arising [from] fraud, criminal activity, or willful misconduct.").

the indemnification procedure applies, LHCP asserts any noncompliance with Section 8.05(c)'s notice requirement does not compel dismissal.[110] Regarding the Motion's substantive challenges to Count I, LHCP argues the Amended Complaint alleges specific facts which state a reasonably conceivable breach claim.[111]

### D. WHETHER COUNT II IS MOOT

The Motion asserts Count II is moot.[112] Defendants insist there is no justiciable controversy regarding the Standby Agreements, because the Amended Default Notice retracted the Notice of Default's acceleration demand.[113] Additionally, Defendants argue the harms alleged in Count II are not cognizable.[114]

LHCP insists Count II is not moot.[115] LHCP argues a redressable injury exists, because the Notice of Default "caused [it] to expend time, effort and financial resources . . . which otherwise would have been dedicated to growing [its] business."[116] LHCP notes the Amended

---

[110] MTD Opp'n at 23-25 (citing APA § 8.05(c) ("failure to give [] prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure.")). Thus, any failure to provide notice is inconsequential, because "HCSS does not argue that it forfeited any rights or defenses." MTD Opp'n at 23.

[111] *Id.* at 26-28 (citing Am. Compl. ¶¶ 47, 65-67, 71 (allegations concerning the Financial Statements Representation); *id.* ¶¶ 66, 82 (allegations regarding the Financial Statements Representation); *id.* ¶ 83 (allegation addressing the Accounts Receivable Representation)). LHCP notes the Motion does not challenge the allegations that Defendants breached Sections 2.01, 4.15, and 4.16. *Id.* at 25 (citing Am. Compl. ¶¶ 81, 84-85).

[112] MTD at 39-42 ("'[b]ecause the requirement of actual controversy goes direct to the court's subject matter jurisdiction over an action, a motion to dismiss based' on mootness is properly examined under Rule 12(b)(1), and 'the court may consider documents and materials extrinsic to the complaint.'" (quoting *NAMA Hldgs. v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 435 n.43 (Del. Ch. Apr. 27, 2007))).

[113] *See* MTD at 40; Amended Default Notice.

[114] MTD at 41-42. First, LHCP's requested "costs associated with responding to the [Notice of Default] and acting to enforce the Standby Agreements," are not an independent injury. MTD at 41 n.10 (citing *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) (holding "the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable[.]")); Am. Compl. ¶¶ 98-99. Second, losses associated with "jeopardize[ing] LHCP's relationship with Live Oak[,]" are speculative. MTD at 42 (noting the Amended Complaint does not allege "any action by Live Oak" or "any actual change to LHCP's relationship with Live Oak."); Am. Compl. ¶ 100.

[115] MTD Opp'n at 30-32.

[116] *Id.* at 30-31 (citing Am. Compl. ¶ 98; *NAMA*, 922 A.2d at 435 (holding where "an alleged injury still exists despite the occurrence of intervening events, a justiciable controversy remains, and the mootness doctrine will not operate to deprive a court of jurisdiction to hear the case.")).

14

Default Notice, "reserve[d] all rights to accelerate, enforce, or collect upon the" Standby Agreements.[117] Thus, the issue is not moot, because HCSS voluntarily ceased the injurious conduct due to this litigation, while retaining the ability to resume it at any time.[118]

## IV. STANDARD OF REVIEW

Civil Rule 12(b)(2) applies to a motion to dismiss for lack of personal jurisdiction.[119] While a plaintiff need not plead facts establishing personal jurisdiction in its complaint,[120] on a Civil Rule 12(b)(2) motion the "plaintiff bears the burden of showing a basis for [the] exercise of jurisdiction over a nonresident defendant."[121] When ruling on such a motion, "the Court may consider the pleadings, affidavits, and discovery of record."[122]

Civil Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted.[123] The Civil Rule 12(b)(6) standard is:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'[124]

The Court, however, ignores "conclusory allegations that lack specific supporting factual allegations."[125]

---

[117] Amended Default Notice.
[118] MTD Opp'n at 31-32 (citing *Sanborn v. Geico Gen. Ins. Co.*, 2016 WL 520010, at *10 (Del. Super. Feb. 1, 2016)). Defendants assert this reservation of rights does not abrogate Count II's mootness, because the Amended Default Notice does not "threaten a breach of the Standby Agreements." MTD Reply at 26-28.
[119] Del. Super. Ct. Civ. R. 12(b)(2).
[120] *Green Am. Recycling, LLC v. Clean Earth, Inc.*, 2021 WL 2211696, at *3 (Del. Super. June 1, 2021).
[121] *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 437 (Del. 2005).
[122] *Economical Steel Building Technologies, LLC v. E. West Construction, Inc.*, 2020 WL 1866869, at *1 (Del. Super. Apr. 14, 2020) (citing *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007)).
[123] Del. Super. Ct. Civ. R. 12(b)(6).
[124] *In re General Motors (Hughes) Shareholder Litigation*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).
[125] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).

## V.    DISCUSSION

### A.  THE COURT LACKS PERSONAL JURISDICTION OVER THE STINSONS.

The Motion seeks dismissal of all claims against the Stinsons for lack of personal jurisdiction.[126]  The only basis for personal jurisdiction LHCP proffers, is the APA's forum selection clause.[127]  Yet, the Stinsons did not sign the APA in their individual capacity,[128] and "officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."[129]  As such, the Court lacks personal jurisdiction over the Stinsons, unless they fall within one of the exceptions pursuant to which a non-signatory can be bound by a forum selection clause.

Courts enforce a forum selection clause against a non-signatory if: "(i) the agreement contains a valid forum selection provision; (ii) the non-signatory has a sufficiently close relationship to the agreement, either as an intended third-party beneficiary under the agreement or under principles of estoppel; and (iii) the claim potentially subject to the forum selection provision arises from the non-signatory's standing relating to the agreement."[130]  Here, the parties only dispute the second element.[131]

---

[126] *See* MTD at 5-9.
[127] *See* Am. Compl. ¶ 15; MTD Opp'n at 32-42; *see also National Indus. Group (Holding) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 381 (Del. 2013) ("[w]here the parties to the forum selection clause have consented freely and knowingly to the court's exercise of jurisdiction, the clause is sufficient to confer personal jurisdiction on a court.").
[128] *See generally* APA.
[129] *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132 (Del. Ch. 2008).
[130] *Florida Chemical Company, LLC v. Flotek Industries, Inc.*, 262 A.3d 1066, 1090 (Del. Ch. Aug. 17, 2021) (citing *Capital Group Cos., Inc. v. Armour*, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004)).
[131] *See supra* III.A.

### 1. The Stinsons are Not Third-Party Beneficiaries to the APA for purposes of the Amended Complaint's claims.

LHCP argues the Stinsons are third-party beneficiaries to the APA.[132]  To be a third-party beneficiary:

> (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.[133]

While a contractual third-party beneficiary disclaimer does not preclude a party receiving a "specific grant of benefits" from being a third-party beneficiary,[134]  Courts enforce "customized" no third-party beneficiary provisions under freedom of contract principles.[135] A single carve-out to an otherwise comprehensive third-party beneficiary disclaimer, evidences a customized provision.[136]

APA Section 9.08 states, "[e]xcept as provided in ARTICLE VIII, this Agreement is for the sole benefit of the parties hereto . . . and nothing herein . . . is intended to or shall confer upon any other Person [] [] any legal or equitable right, benefit, or remedy[.]"[137]  This customized no third-party beneficiary provision, shows the parties disclaimed any third-party beneficiary except for the circumstances covered by Article VIII.  While the Stinsons can seek indemnification under Section 8.03,[138] that does not make them third-party beneficiaries for the purpose of

---

[132] *See* MTD Opp'n at 35-39.
[133] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 271 (Del. 2022) (internal quotes omitted).
[134] *Amirsaleh v. Board of Trade of City of New York, Inc.*, 2008 WL 4182998, at *4-5 (Del. Ch. Sept. 11, 2008).
[135] *See Crispo v. Musk*, 2022 WL 6693660, at *4 (Del. Ch. Oct. 11, 2022) ("[w]hen a no third-party beneficiaries provision is 'customized', however, such as when it 'contains a carve-out' listing some groups as third-party beneficiaries, this court has concluded that the parties knew how to confer third-party beneficiary status and deliberately chose not to do so with respect to any unlisted groups." (quoting *Fortis Advisors LLC v. Med. Co., & Melinta Therapeutics, Inc.*, 2019 WL 7290945, at *4 (Del. Ch. Dec. 18, 2019)).
[136] *See Fortis Advisors*, 2019 WL 7290945, at *4.
[137] APA § 9.08.
[138] *See id.* § 8.03 (allowing Seller's "Affiliates" and "Representatives" to seek indemnification from LHCP).

conferring personal jurisdiction in this case for two reasons. First, LHCP specifically denies it is bringing an Article VIII indemnification claim.[139] More fundamentally, the Stinsons are not seeking indemnification, rather the Amended Complaint requests damages *from* them.[140] The inclusion of a carve-out making individuals third-party beneficiaries "expressly for [one] purpose[] . . . [demonstrates they] are not third part[y] [beneficiaries] in other contexts."[141] Therefore, the forum selection clause does not convey personal jurisdiction over the Stinsons, because this case does not fall within the narrow situation where they are third-party beneficiaries to the APA.

### 2. Equitable Estoppel does Not Provide Personal Jurisdiction over the Stinsons.

LHCP contends the APA's forum selection clause independently binds the Stinsons under equitable estoppel principles.[142] A forum selection clause binds a non-signatory based on equitable estoppel if: (1) "the non-signatory accepted a direct benefit from the agreement"; or (2) it was "foreseeable" the non-signatory would be bound by the agreement.[143] As discussed above, the Court notes that the customized forum selection provision defeats arguments over foreseeability. This case does not fit into either of the two instances where "foreseeability" alone provides personal jurisdiction.[144] This leaves the "direct benefit" test as the sole possible basis for personal jurisdiction over the Stinsons.

---

[139] *See* MTD Opp'n at 21-22 ("the [breach of contract] claim is expressly excepted from the APA's indemnification procedure.").

[140] *See* Am. Compl. at Prayer for Relief.

[141] *Crispo*, 304 A.3d at 578.

[142] MTD Opp'n at 39-42.

[143] *Florida Chemical*, 262 A.3d at 1090 (citing *Sustainability P'rs LLC v. Jacobs*, 2020 WL 3119034, at *6 (Del. Ch. June 11, 2020)); *see also Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *5 (Del. Ch. Sept. 18, 2019) ("[a]lthough the direct-benefit and foreseeability inquiries have been articulated as disjunctive, many Delaware cases have relegated the foreseeability inquiry to a subordinate role.").

[144] Courts have "applied the foreseeability inquiry as a standalone basis for satisfying the closely-related test in two scenarios: (1) where a nonsignatory defendant seeks to enforce a forum selection clause against a signatory plaintiff; or (2) where a controlled nonsignatory, who bears a clear and significant connection to the subject matter of the agreement, could be manipulated by controller signatories in an end-run around the agreement's forum selection clause." *Golden v. ShootProof Holdings, LP*, 2023 WL 2255953, at *7 (Del. Ch. Feb. 28, 2023) (internal

18

A non-signatory "is estopped from refusing to comply with a forum selection clause when she receives a 'direct benefit' from a contract containing a forum selection clause."[145] The direct benefit can arise before or after the relevant agreement is executed[146] and "both pecuniary and non-pecuniary benefits [are] sufficient."[147] Critically, the benefit must be "actually received, 'the mere contemplation of a benefit does not directly confer one.'"[148]

Here, the Stinsons did not receive a direct benefit under the APA. First, LHCP paid HCSS the Purchase Price. The Court understands the Stinsons are HCSS's sole members, but the Purchase Price was directly paid to HCSS and not the Stinsons. Second, Section 8.03 allows the Stinsons to seek indemnification from LHCP for breaches of the APA.[149] However, the Stinsons have never asserted any indemnification claim. Therefore, while the APA contemplates a direct benefit, the Stinsons have not yet received any benefit. Accordingly, the direct benefit test does not provide personal jurisdiction over the Stinsons.

The Court can obtain personal jurisdiction over someone through: (i) general personal jurisdiction; (ii) specific personal jurisdiction that satisfies the long-arm statute and due process; (iii) transient personal jurisdiction; (iv) waiver; or (v) by contractual agreement. Here the parties drafted a customized forum selection clause. The parties could have easily drafted the clause to include the Stinsons for all matters arising under the APA; however, the parties did not do that. Given this, the Court is not inclined to exercise personal jurisdiction over non-resident

---

quotations omitted) (citations omitted). Neither situation applies here. The Stinsons, are not the ones seeking to enforce the APA's forum selection clause. Additionally, the controlled entity, HCSS, not the controllers, signed the APA. *See BAM International, LLC v. MSBA Group Inc.*, 2021 WL 5905878, at *13 (Del. Ch. Dec. 14, 2021) (rejecting the applicability of "the second [foreseeability] factual scenario," because "the Moving Defendants are alleged to have themselves caused the signatory to act, not the other way around.").

[145] *Capital Group*, 2004 WL 2521295, at *6.
[146] *Florida Chemical*, 262 A.3d at 1091.
[147] *Neurvana*, 2019 WL 4464268, at *4.
[148] *Florida Chemical*, 262 A.3d at 1091 (quoting *Neurvana*, 2019 WL 4464268, at *4).
[149] *See* APA § 8.03.

individuals who lack a connection with Delaware. The Court **GRANTS** the Motion and dismiss all claims against the Stinsons for lack of personal jurisdiction.[150]

## B. Count III is Duplicative of Count I.

The Motion asks the Court to dismiss LHCP's fraud claim, because it: (1) fails to comply with Rule 9(b); and (2) is duplicative of the breach of contract claim.[151] The Court need not reach the Rule 9(b) issue, because Count III is impermissibly duplicative of Count I.

It is well-settle that **"fraud claims cannot be bootstrapped to breach of contract claims."**[152] For a fraud claim to coexist with a breach of contract claim "the plaintiff must allege [] the defendant breached a duty [] [] independent of the duties imposed by the contract."[153] This includes alleging "distinct" "damages [] under each cause of action[.]"[154] Therefore, even when a fraudulent inducement claim challenges "separate and distinct conduct" from a breach of contract claim, failing to allege "separate damages . . . is an independent ground for dismissal."[155]

LHCP's fraud claim does not allege damages separate from those sought in its breach of contract claim. Both Counts I and III seek damages arising from the Business's improper billing

---

[150] Because the Court lacks personal jurisdiction over the Stinsons, it does not analyze Defendants' substantive arguments regarding why Counts I and III fail as they related to the Stinsons specifically.

[151] *See supra* III.B.

[152] *E.g.*, *Anschutz Corporation v. Brown Robin Capital, LLC*, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020).

[153] *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *3 (Del. Super. Mar. 21, 2017) (internal quotation omitted); *see Anschutz*, 2020 WL 3096744, at *15 ("[w]hen a party claims he was fraudulently induced into entering a contract by promises that were then included in the negotiated language of that very contract, his remedy should be in contract, not tort. Both claims lead to the same destination—a remedy in damages causally related to the broken promises.").

[154] *Ridley v. Bayhealth Medical Center, Inc.*, 2018 WL 1567609, at *6 (Del. Super. Mar. 20, 2018); *see inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *8 (Del. Super. Jan. 26, 2021) ("[u]nder Delaware's pleading standard, the damages may not simply 'rehash' the damages allegedly caused by the breach-of-contract." (quoting *Khushaim v. Tullow Inc.*, 2016 WL 3594752 at *6 (Del. Super. June 27, 2016))).

[155] *inVentiv Health*, 2021 WL 252823, at *8 (citing *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at *9 (Del. Super. Ct. June 6, 2012)).

20

practices before the Transaction.[156]  The Amended Complaint's Prayer for Relief seeks an identical quantum of damages for both breach of contract and fraud – $1,000,000.[157]  Moreover, LHCP's requested relief for Count III explicitly includes "damages . . . [for] breach of contract."[158]  These allegations show Count III is "a repackaging of the breach of contract claim."[159]  Hence, LHCP's fraud claim impermissibly bootstraps its breach of contract claim and the Court **GRANTS** the Motion, dismissing Count III.

### C. Count I is Ripe and Well-Pled, Except for the Allegation that HCSS Breached the APA's Non-Competition Provision.

HCSS first argues Count I is not ripe because LHCP did not comply with the APA's indemnification procedure – namely the requirement to provide notice before making an indemnity claim.[160]  LHCP argues notice was not required, because Count I states a claim for willful misconduct, which the parties carved-out of the indemnification requirement.  The Court need not determine whether the APA's indemnification provisions cover Count I.  Even if Section 8.05(c) applies, LHCP's failure to provide notice does not make Count I unripe.

---

[156] *See* Am. Compl. ¶¶ 88 ("[a]s a result of HCSS's breaches of the Asset Purchase Agreement, LHCP has suffered and will continue to suffer significant financial damages in the form of costs associated with correcting HCSS's improper and false billing and coding procedures[.]"), 116 ("[i]n addition to the damages to Plaintiff's expectancy under the Asset Purchase Agreement, Plaintiff is entitled to losses and other costs incurred in attempting to correct Defendants' invalid business practices.").  LHCP's breach of contract claim also requests damages associated with HCSS's alleged failure to provide the "proprietary Excel workbook" described in Section 2.01. *Id.* ¶ 81. This additional component of Count I's requested damages does not impact the "bootstrapping" analysis because the relevant inquiry is if the damages sought *for fraud* are "'separate and apart from' the allege breach of contract damages." *Ridley v. Bayhealth Medical Center, Inc.*, 2018 WL 1567609, at *6 n.60 (Del. Super. Mar. 20, 2018) (quoting *Greenstar, LLC v. Heller*, 934 F.Supp.2d 672, 697 (D. Del. 2013)).  Moreover, exact overlap in requested damages is not required.  So long as the fraud claim "seek[s] essentially the same recovery" as the breach of contract claim, it "cannot survive." *Collab9, LLC v. En Pointe Technologies Sales, LLC*, 2019 WL 4454412, at *3 (Del. Super. Sept. 17, 2019).
[157] Am. Compl. at Prayer for Relief.
[158] *Id.*
[159] *Collab9*, 2019 WL 4454412, at *3.  This conclusion is confirmed by the fact that the allegedly fraudulent representations and warranties challenged in Count III are the same provisions LHCP alleges HCSS breached in Count I. *Compare* Am. Compl. ¶¶ 82-85 (alleging HCSS breached Sections 4.04, 4.12, 4.15, and 4.16 of the APA), *with id.* ¶¶ 105-108 (alleging Section 4.04, 4.12, 4.15, and 4.16 were fraudulent).
[160] MTD at 30-34.

21

The APA's plain text undercuts HCSS's ripeness argument. The APA states any failure to provide notice "shall not [] relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure."[161] HCSS does not argue it forfeited any rights or defenses because LHCP did not give notice of its breach claims.[162] Thus, while failure to comply with a contractual pre-litigation notice provision can justify dismissing a claim,[163] Section 8.05(c)'s text shows that is not the case here. Hence, the Court finds that Count I is ripe.

Ripeness notwithstanding, the Motion asks the Court to dismiss Count I for failure to state a claim.[164] To state a breach of contract claim, "a plaintiff must allege the existence of a contract, breach, and causally related damages."[165] HCSS only challenges whether LHCP alleges facts supporting a reasonable inference of breach. The Court concludes, however, the Amended Complaint states a reasonably conceivable breach claim.[166]

---

[161] APA § 8.05(c).

[162] *See generally* MTD; MTD Reply.

[163] *See, e.g.*, *AluminumSource, LLC v. LLFlex, LLC*, 2023 WL 2547996, at *18-19 (Del. Super. Mar. 16, 2023); *see also LG Electronics Inc. v. Invention Investment Fund I, L.P.*, 2024 WL 4675050, at *7 (Del. Super. Sept. 25, 2024) ("where the contract has no language that 'clearly evidence an intent that litigation be pursued only after notice and an opportunity to cure,' a breach claim will not fail for lack of notice." (quoting *WyPie Invs., LLC v, Homschek*, 2018 WL 1581981, at *13 (Del. Super. Mar. 28, 2018)).

[164] MTD at 36-39. Notably, the Motion only challenges the sufficiency of LHCP's pleadings regarding HCSS's alleged breach of Sections 4.04, 4.12, 6.07(b)(iii). *See id.* Therefore, even if the Court were to grant the portion of the Motion dealing with Count I, some part of LHCP's breach claim would remain.

[165] *ESG Capital Partners II, LP v. Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, at *3 (Del. Ch. Dec. 16, 2015) (citing *VLIW Tech, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[166] *See Channel PES Acquisition Co., LLC v. Heritage-Crystal Clean, Inc.*, 2024 WL 3252166, at *12 (Del. Super. June 30, 2024) ("[Plaintiff] could have pled more detail as to how [the contract was breached], but is not required to. At this stage, it is 'reasonably conceivable' that [Plaintiff] could prove the [contract was breached] . . . therefore, the Court declines to dismiss the claim at this point."). The only specific breach allegation that fails to state a claim, is LHCP's assertion that HCSS breached Section 6.07 of the APA by competing with the Business post-closing. *See* Am. Compl. ¶ 38 (citing APA § 6.07). LHCP's opposition brief does not respond to the Motion's convincing argument that any Section 6.07 breach claim is not well-pled. *See* MTD at 37-38. *See generally* MTD Opp'n. Therefore, LHCP has waived any claim based on Section 6.07. *See In re Dow Chem. O. Deriv. Litig.*, 2010 WL 66769, at *7 (Del. Ch. Jan 11, 2010) (holding a plaintiff abandons a claim when it fails to respond or address defendants' argument in their motion to dismiss). Accordingly, the Court **GRANTS** the Motion regarding the portion of Count I based on Section 6.07.

The Amended Complaint contains extensive allegations regarding the allegedly improper billing scheme before the Transaction when Defendants controlled the Business.[167] LHCP ties Defendants' billing scheme to the allegedly breached contractual representations and warranties.[168] These allegations "are sufficient to put [HCSS] on notice of the claim against [it]."[169] While HCSS challenges the factual sufficiency of LHCP's allegations,[170] that argument does not compel dismissal.[171] Because the Amended Complaint alleges facts which "if true, would satisfy the elements of breach of contract," Count I is well-pled.[172] The Court **DENIES** the Motion regarding Count I, except for the portion based on APA Section 6.07.[173]

### E. Count II is Moot.

The Motion argues that the Court should dismiss Count II as moot.[174] Count II alleges HCSS breached the Standby Agreements by accelerating payment of the Seller Notes without Live Oak Bank's consent and before satisfying the Loan.[175] HCSS insists Count II is moot, because the Amended Default Notice retracted the Notice of Default's "election to accelerate the outstanding principal and accrued interest[.]"[176]

The mootness doctrine "requires a court to dismiss a claim 'if the substance of the dispute disappears due to the occurrence of certain events following the filing of an action.'"[177]

---

[167] *See* Am. Compl. ¶¶ 2-3, 20-22, 44-45, 49-50, 65-67.

[168] *See id.* ¶¶ 82-85

[169] *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 1454744, at *2 (Del. Ch. May 3, 2007) (holding dismissal of a breach of contract claim is inappropriate where such notice exists).

[170] *See* MTD at 38-39.

[171] *See D'Antonio v. Wesley College, Inc.*, 2023 WL 9021767, at *4 (Del. Super. Dec. 29, 2023) (holding a breach of contract claim should not be dismissed if there are "material issues of fact" regarding the claim).

[172] *Sorantino v. Newton*, 2019 WL 2355018, at *1 (Del. Super. June 4, 2019).

[173] *See supra* n.164.

[174] MTD at 39-42. As the party invoking the mootness doctrine, HCSS has "the burden of establishing that the controversy has become moot." *Employers Insurance Company of Wausau v. First State Orthopedics, PA*, 312 A.3d 597, 608 (Del. 2024).

[175] *See* Am. Compl. ¶¶ 90-100 (citing Notice of Default).

[176] Amended Default Notice.

[177] *NAMA Holdings, LLC*, 922 A.2d at 435 (quoting *Multi–Fineline Electronix, Inc. v. WBL Corp. Ltd.*, 2007 WL 431050, at *8 (Del. Ch. Feb. 2, 2007)); *see General Motors Corp. v. New Castle County*, 701 A.2d 819, 823 (Del.

Conversely, "if the alleged injury still exists despite the occurrence of intervening events, a justiciable controversy remains" and the mootness doctrine is inapplicable.[178] Hence, "mootness only justifies dismissal when 'it is certain' that a favorable judgment 'could have no practical effect on the parties.'"[179] Voluntary cessation of allegedly wrongful conduct after litigation commences does not automatically render a dispute moot.[180] A claim is not moot "when a defendant continues to defend the legality of its actions, making it not clear why the defendant would refrain from the same conduct in the future."[181]

LHCP argues HCSS's reservation of rights in the Amended Default Notice is akin to defending the legality of the Notice of Default's acceleration of the Seller Notes.[182] Yet, the Amended Default Notice did not represent that HCSS has a current right to accelerate payment of the Seller Notes, or that doing so would not breach the Standby Agreements.[183] Nor did HCSS threaten to reaccelerate payment in the immediate future.[184] Rather, the Amended Default Notice simply reiterated the position that LHCP defaulted on the Seller Notes, and reserved HCSS's rights to respond appropriately.[185] Such a reservation of rights is not the same as defending the legality of a previous course of conduct. Thus, because HCSS rectified its alleged

---

1997) ("[a]ccording to the *mootness* doctrine, although there may have been a justiciable controversy at the time the litigation was commenced, the action will be dismissed if that controversy ceases to exist." (emphasis in original)).

[178] *NAMA Holdings*, 922 A.2d at 435.

[179] *B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC*, 2020 WL 4195762, at *2 (Del. Super. July 21, 2020) (quoting *PPL Corp. v. Riverstone Hldgs., LLC,* 2020 WL 3422397, at *3 (Del. Ch. Jun. 22, 2020)).

[180] *See Employers Insurance Company of Wausau*, 312 A.3d at 608. For example, the mootness doctrine does not compel dismissal if the challenged conduct is "capable of repetition yet evading review. *Id.* at 611. That exception does not apply here, however, because while HCSS's conduct "is capable of repetition, it will not necessarily evade review." *See, e.g.*, *City of Wilmington v. K.J.C.*, 931 A.2d 436 (Table) (Del. 2007) (discussing when the capable of repetition but evading review exception applies). Specifically, HCSS's demand for payment under the Standby Agreements is not the type of conduct that is *inherently* unlikely to cease or become moot before the merits of any alleged breach are litigated.

[181] *Sanborn v. Geico General Insurance Company*, 2016 WL 520010, at *10 (Del. Super. Feb. 1, 2016) (internal quotes omitted) (cleaned up).

[182] *See* MTD Opp'n at 30-32.

[183] *See* Amended Default Notice.

[184] *See id.*

[185] *See id.*

24

breach of the Standby Agreements and LHCP articulates no cognizable remaining harm,[186] Count II is moot. The Court **GRANTS** the Motion, dismissing Count II.

## VI.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part**,** and **DENIES** in part, Defendants' Motion.  Specifically, the Court: (i) dismisses all claims against the Stinsons for lack of personal jurisdiction; (ii) dismisses Count III as duplicative of Count I; and (iii) dismisses Count II as moot.  Count I remains pending, except for the exception discussed above.

**IT IS SO ORDERED.**

August 18, 2025
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, President Judge

cc:     File&ServeXpress

---

[186] Allegation that HCSS's breach of the Standby Agreements harmed LHCP's relationship with Live Oak Bank are unsupported by any specific factual allegations and are thus be rejected as conclusory. *See In re General Motors*, 897 A.2d at 168. *See generally* Am. Compl.  Therefore, that alleged harm does not obviate Count II's mootness. Similarly, LHCP's suggestion that its request for attorneys' fees associated with HCSS's alleged breach of the Standby Agreements is a cognizable harm that overcomes mootness, is contrary to United States Supreme Court precedent. *See Diamond*, 476 U.S. at 70-71 (rejecting the argument that a claim for attorneys' fees along gave a plaintiff Article III standing, because "the mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable[.]").